IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| YOLANDA CANDELARIO RAMOS, et al.; | * |
| | * |
| Plaintiffs, | * |
| | * |
| vs. | *   CIVIL NO. 98-2146 (RLA) |
| | * |
| BAXTER HEALTHCARE CORPORATION OF | * |
| PUERTO RICO, INC., et al.; | *   JURY TRIAL REQUESTED |
| | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' MOTION AND MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR ATTORNEYS FEES**

**TO THE HONORABLE COURT**:

COME NOW THE PLAINTIFFS, through their undersigned attorneys, respectfully allege, state and request as follows:

INTRODUCTION

Defendants Baxter Healthcare of Puerto Rico, Inc. (hereinafter "Baxter-PR"), Baxter International, Inc., Baxter Healthcare Corp., et al. have moved this Court, pursuant to 29 U.S.C. 1132(g) and Local Rules 311.2 and 332, for an award of attorneys fees for its defense of Counts II and III of this case.

In support of their petition for an award of attorneys fees, defendants argue that the three-count complaint filed by plaintiffs on October 14, 1998 against them alleging violations under Title VII of the Civil Rights Act of 1964 (Count I), the Employee Retirement Income Security Act (ERISA) (Count II) and the Puerto Rico Civil Code (Count III) was dismissed

1

on April 2, 2003 by the order entered by the Court granting Baxter's motion for summary judgment. While recognizing that under ERISA, pursuant to 29 U.S.C. 1132(g)(1), which provides that "[i]n any action under this subchapter..., the court in its discretion may allow a reasonable attorney's fee and cost of action to either party", Baxter proposes that the Court should exercise its discretion and enter an order requiring that plaintiffs and/or plaintiffs' counsels pay Baxter's attorney's fees incurred for its defenses of Counts II and III and for the filing of its attorneys fees motion.

In support of its motion, Baxter claims that from the inception of this case "[i]t advised plaintiffs that ample authority, including controlling Supreme Court authority, made clear that there was no merit to plaintiffs' ERISA breach of fiduciary duty claim (Count II) and claim for benefits under the Puerto Rico Civil Code (Count III)[,... y]et, plaintiffs did not dismiss those claims and instead conducted discovery and opposed Baxter's motion for summary judgment, at least with respect to Count II".

Plaintiffs reject defendants petition for an award of attorneys fees, since they do not meet the criteria established by the First Circuit to justify an award of attorneys fees, and move the Court to deny its petition..

DISCUSSION

I.   THE LEGAL STANDARD:

Section 502 of ERISA, 29 U.S.C. 1132(g)(1) provides that "[i]n any action under this subchapter..., the court in its discretion may allow a reasonable attorney's fee and cost of action to either party".

At the outset, it should be pointed out that attorneys' fees are only available in ERISA cases under 29 U.S.C. 1132(g)(1) to the prevailing party, but they are not obligatory nor mandatory . See Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc). Furthermore, most courts of appeals have declined to even adopt a mandatory presumption that attorneys' fees will be awarded to prevailing plaintiffs in ERISA cases, absent special circumstances – a situation which is not present in the instant case. See Eddy, 59 F.3d at 206-07; Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield, 41 F.3d 1476, 1485-86 (11th Cir.), cert. denied, 115 S. Ct. 2002 (1995); McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., 33 F.3d 253, 254 (3d Cir. 1994); Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 422 (4th Cir. 1993); Armistead v. Vernitron Corp., 944 F.2d 1287, 1302 (6th Cir. 1991); Iron Workers Local #272 v. Bowen, 624 F.2d 1255, 1265-66 (5th Cir. 1980); see also Note, Attorney's Fees Under ERISA: When Is an Award Appropriate?, 71 Cornell L. Rev. 1037, 1049-55 (1986) (arguing against a mandatory presumption).

While some circuit courts have adopted a different rule, in Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 225 (1st.. Cir. 1996), the First Circuit adopted the majority rule stating the following:

> We hold that, in an ERISA case, a prevailing plaintiff does not, merely by prevailing, create a presumption that he or she is entitled to a fee-shifting award. Our holding flows naturally from the importance of preserving flexibility in this area of the law. Our holding is, moreover, adumbrated by our earlier decision in [Gray v. New England Tel. and Tel. Co., 792 F.2d 251 (1st Cir. 1986)]. **There, we explicitly rejected the creation of a presumption in favor of prevailing defendants**. 792 F.2d at 258. We pointed out that 29 U.S.C. §§ 1132(g)(1) speaks in discretionary terms,

and that its legislative history, unlike that of certain civil rights statutes, does not support a presumption vis-à-vis counsel fees. See Gray, 792 F.2d at 258-59. This rationale suggests to us that a presumption in favor of prevailing plaintiffs also would be overkill; because the five basic factors have a built-in bias in favor of prevailing plaintiffs, see id. (recognizing that the second, third, and fourth factors may favor prevailing plaintiffs more so than prevailing defendants), the superimposition of a presumption seems unnecessary as a means of protecting the legitimate interests of plan beneficiaries and participants.  (Emphasis added)

Furthermore, in Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 225 (1st. Cir., 1996),  the First Circuit set forth the following scheme based on the basic five factors to be considered in determining whether to award attorneys fees under ERISA to a prevailing party, be it the plaintiff or the defendant:

> The appellant also challenges the denial of counsel fees. Congress declared that, in any ERISA claim advanced by a "participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee" to the prevailing party. 29 U.S.C. §§ 1132(g)(1). Unlike other fee-shifting statutes, however, ERISA does not provide for a virtually automatic award of attorneys' fees to prevailing plaintiffs. Instead, fee awards under ERISA are wholly discretionary. See Gray, 792 F.2d at 259.
>
> This discretion is not standardless. To channel its exercise, this court has cited five basic factors that customarily should be weighed in the balance: (1) the degree of culpability or bad faith attributable to the losing party; (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award; (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions. See id. at 257-58. Other courts of appeals have compiled strikingly similar lists. See Eddy v. Colonial Life Ins. Co., 59 F.3d 201, 206 n.10 (D.C. Cir. 1995) (collecting cases). The circuits agree that such compendia are exemplary rather than exclusive. See id. at 206; Quesinberry, 987 F.2d at 1029. An inquiring court may – indeed, should – consider additional criteria that seem apropos in a given case. See Anthuis, 971 F.2d at 1012. In a word, the test for granting or denying counsel fees in an ERISA case is "flexible." Gray, 792 F.2d at 258.

Indeed, applying these same five factors to an ERISA case where the defendant prevailed on

4

a directed verdict at the close of trial, the First Circuit found that it was not an abuse of discretion to deny attorney fees to the successful defendant in ERISA action where there was no showing that plaintiff had knowledge that suit was without basis.  See: <u>Gray v. New England Tel. and Tel. Co.</u>, 792 F.2d 251, (1ST Cir., 1986) .  It is relevant to note that in <u>Gray</u>, the Circuit Court also found no abuse of discretion in the district court's denial of attorney fees for the prevailing defendant on the related  ADEA and wrongful dismissal claims which were also dismissed and there was no finding of bad faith.  <u>Gray</u>, at 259.

In <u>Gray</u>, the First Circuit rejected the seventh Circuit's criticism of the five factor approach set forth in <u>Bittner v. Sadoff & Rudoy Industries</u>, 728 F.2d 820 (7th Cir.1984).  Its reasoning is particularly relevant to the analysis this court should perform in the instant case:

> Because it is not a rigid test, but rather provides general guidelines for the district court judge's exercise of discretion, the five factor approach allows for award of fees to defendants in proper cases.  We disagree with [defendant's] reasoning that the second, third, and fourth factors are inapplicable in prevailing defendant cases. Ability to satisfy an award, deterrence, and benefit conferred by the parties' positions are all relevant considerations in the decision to award a fee.  Even if these factors favor a prevailing plaintiff more strongly than a prevailing defendant, <u>Carpenters Southern</u>, 726 F.2d at 1416; <u>Marquardt v. North American Car Corp.</u>, 652 F.2d 715 (7th Cir.1981), we do not believe that this result is out of keeping with the purposes of ERISA. While the ERISA attorney's fees provision may not have been intended to encourage "private attorney general" type suits by providing fees almost as a matter of course as was true of the Civil Rights Attorney's Fees provision, 42 U.S.C. § 1988, see H.R.Rep. No. 1558, 94th Cong., 2d Sess. 6-7 (1976), U.S.Code Cong. & Admin.News, 1976, p. 5908, **ERISA was primarily intended to protect the interests of plan beneficiaries and participants**; therefore, such a "bias" in the standard does not thwart the legislative injunctive that attorney's fees may be awarded to "either" party, in the court's discretion. **Factors may simply not weigh equally where defendants rather than plaintiffs seek fees**.

Gray v. New England Tel. and Tel. Co., 792 F.2d at 258-259.  Thus, this court may properly consider the "chilling effect" an award for defendants may have on future potential plaintiffs, and can properly look to the jurisprudence of the Equal Access to Justice Act, 42 U.S.C. § 1988, in considering the defendants' attorney fees request at bar.

II.     APPLICATION OF THE LEGAL STANDARD

This Court must determine whether, by applying the factors enumerated in Gray and Cottrill, to the instant case, an award of attorneys fees to the prevailing defendants is warranted, as a proper exercise of its discretion.    Plaintiffs are convinced, for the reasons set forth and explained below, that such an award is not justified and, in fact, is contraindicated in this case.

Factor (1): the degree of culpability or bad faith attributable to the losing party:

At the outset, it should be pointed out that while the Court dismissed the complaint on April 2, 2003, it did not make any finding of bad faith by the plaintiffs for pursuing their claims.  Indeed, it is clear from the 47 page "Order granting Defendants' Summary Judgement" that this Court wrestled with the complex facts and novel legal issues raised by the plaintiffs, arriving at its decision only after careful weighing of meritorious arguments on both sides.  The Order itself states, in pertinent part that "the Court empathizes with the plaintiffs' situation after rendering many years of services...." See: Order, *supra*, at p. 36.[1]

---

[1]     It is relevant and important for this discussion, that this Court recall the existence of a related claim between these same plaintiffs and Baxter Healthcare of Puerto Rico and Baxter Healthcare. In that case, filed before the Court of First Instance and alleging violations of Puerto Rico Laws 80 (unjust dismissal) and 100 (age discrimination), that Court issued a partial summary judgment

In this case the plaintiffs clearly set forth important and sometimes novel legal arguments in good faith. All three of their claims emanated from the difficult situation faced by hundreds of Puerto Rican former Baxter employees who, after losing their employment to a corporate decision to move their jobs to other locations and employ younger employees to perform them, were left with a pension plan which they felt to be decidedly inferior to that of their counterparts in the United States. All three of the counts alleged by the plaintiffs are intrinsically interrelated. The discovery which was taken by both parties, but especially by the plaintiffs, was essential for all three claims.

The plaintiffs have not been accused by the defendants of taking this case in bad faith, nor can they be. The equities of these claims are undeniable. The harm the plaintiffs have suffered is real. The law on these claims was not at all clear, especially that surrounding their Title VII claim, and defendants can point to no prejudice plaintiffs' inclusion of their ERISA and Puerto Rico Civil Code claims, since no additional discovery or legal efforts were necessary to defend against those claims.

Factor (2): the depth of the losing party's pocket, i.e., his or her capacity to pay an award:

For the overwhelming majority of the plaintiffs' their financial situation is very precarious and, for some, bleak. The vast majority of the plaintiffs remain either

---

on the Law 80 claim in favor of the plaintiffs. The Puerto Rico Circuit Court of Appeals reversed. The case is now before the Puerto Rico Supreme Court, which, several months ago, issued an order to the defendants to show cause why the appellate decision should not be vacated and the partial summary judgment in favor of the Law 80 claim be reinstated. The corresponding briefs have been filed and the case is now pending final decision by the Puerto Rico Supreme Court. Clearly, this is further indication of the factual merits of plaintiffs' claims

unemployed, underemployed or disabled – due to the injuries and health problems caused by their decades of work in insalubrious and dangerous conditions at the Carolina plant of Baxter Healthcare of Puerto Rico, Inc. The Court should recall that there is a particularly sad irony here: many plaintiffs face chronic illnesses, yet lack health insurance benefits because Baxter allegedly decided it was "too expensive" to extend those benefits – available to its retirees in the U.S. – to its Puerto Rican employees. Baxter alleged that there was no need to do this, because it didn't need it to be "competitive" in the Puerto Rico market. Now, plaintiffs are left "holding the bag", so to speak, of their elevated medical costs. Baxter would add insult to this injury by having them pay its attorneys fees. The injustice of this idea, even as a proposal, is blatant. Not only that, it is wholly impractical to ask individuals, many of whom live at the verge of the poverty line, to compensate a multi-million dollar corporation as punishment for daring to challenge it for the unfair and discriminatory treatment they received. In this context, Baxter's fee petition is shocking in its sheer arrogance.

Those plaintiffs who still enjoy a modicum of good health have also been handicapped by their age and most have not been able to find any decent paying jobs after the Carolina plant closing in 1998. After all, who really employs any worker over fifty years of age, despite the existence of the ADEA and Puerto Rico's law 100? This accounts for the unemployment and underemployment of other plaintiffs.[2]

---

[2] Of particular relevance is the case of Ada Arroyo-Quiles. This plaintiff was able to move back to her native Jayuya after the closing of the Carolina plant in 1998, and obtain temporary

Meanwhile, for those plaintiffs who have reached "the golden age" of retirement, they are "enjoying" the meager fruits of the Puerto Rican pension plan that Baxter bequeathed upon them, after having exploited them for decades of their most productive years. In truth, the capacity of these plaintiffs to pay any fee award to Baxter is minimal or non-existent. Likewise, any effort by them to comply with such a payment would jeopardize their already precarious finances – which themselves are a by-product of Baxter's own decision to limit their pension benefits.

Factor (3): the extent (if at all) to which such an award would deter other persons acting under similar circumstances:

Plaintiffs presented a novel case and the principal count was based on Title VII. While they did not prevail, both this Court and the Court of Appeals commended their effort to establish their claims, expressing empathy for their predicament[3]. Plaintiffs' main difficulty in proving their case was due the fact that most of the documentary evidence was under the sole control of the defendants and it was therefore very difficult, when coupled with the remarkable forgetfulness of almost all of the present and former Baxter officials who were deposed, to uncover the evidence necessary to sustain their claims. This, despite

---

employment at the Baxter plant in that mountain town, to which part of the Carolina production had been relocated. However, when it was discovered that she was part of this plaintiff group, she was told to withdraw her suit or lose her Baxter-Jayuya job. She refused to renounce her statutory right to sue and was subsequently terminated. Her claim is part of the case now pending before the Puerto Rico Supreme Court.

[3] Notably, the Court of Appeals awarded neither costs nor attorneys fees in favor of the prevailing defendants-appellees.

the fact that the parties exchanged thousands of pages of documents and that the plaintiffs, with great sacrifice, took depositions in three metropolitan areas outside this jurisdiction (New York, Chicago and Los Angeles).

The plaintiffs were only able to sustain this litigation because of their number (approximately 300) and by dividing the substantial cost it generated among them. It was not a case taken up lightly, thoughtlessly or on a whim. It was a concerted effort grounded in factually meritorious circumstances and because of the substantial injury suffered by the plaintiffs (as well as a potential class of thousands of members – the more than 6,000 Puerto Ricans who are currently or have, in the past, worked for Baxter in Puerto Rico and who are "beneficiaries" of the Puerto Rico Pension Plan).

Baxter cannot be heard to complain that it needs an award to deter similar litigation in the future. It is highly unlikely that such complex and costly litigation will be taken up again any time soon – especially in this jurisdiction. The cost and complexity of such litigation is deterrence enough. An award of attorneys fees to the prevailing defendants in this case would send a regrettable and devastating message to potential plaintiffs who might be mustering the courage and resources to present Title VII and/or ERISA litigation, even on a much smaller scale. It would have a chilling effect on such potential attorneys and their attorneys – and would be contrary to the public policy which favors and encourages the responsible plaintiff. Indeed, as mentioned above, many Courts are guided by the analogy to the Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. sec. 1988, and will

normally not award a prevailing defendant attorney fees unless the plaintiff's suit was either frivolous or in bad faith. See, e.g., Marquardt v. North American Car Corp., 652 F.2d 715, 718, (7th Cir. 1981); Nachwalter v. Christie, 805 F. 2d 956, 961 (11th Cir. 1986); Farris v. Century Planners, 858 F. Supp. 150 (D. KS 1994). So it should be in this case, where neither of the two courts which have evaluated the merits of plaintiffs' claims have found anything near bad faith on behalf of the plaintiffs.

Factor (4): The benefit (if any) that the successful suit confers on plan participants or beneficiaries generally:

Defendants have established no benefit that they or the proposed class can reap from their successful defense in this case, other than saving a substantial outlay of funds that would have been required to place the Puerto Rico Pension Plan on even footing with the U.S. Plan. The consideration of this factor, insofar as it is only marginally applicable to the situation posed to the Court at bar, does not favor the defendants' position.

Factor (5): The relative merit of the parties' positions.

As set forth *in extenso* above, plaintiffs case did not lack merit. Nor did any of the courts which have considered plaintiffs positions stated that plaintiffs´ positions lacked merit. Losing a lawsuit is not synonymous with a lack of merit.

In this case the plaintiffs claimed that the conduct of the defendants in the administration of the Puerto Rico Pension Plan -- administered by the same Committee as a the Domestic Plan, failed to meet their duty not to allow discrimination against the

11

plaintiffs. Moreover, plaintiffs alleged that the defendants breached their fiduciary duties, allowing a distinct class of employees -- non-Puerto Ricans -- to be benefitted over Puerto Ricans. These claims were premised on the same facts as the Title VII claims, as set forth in plaintiffs' opposition to the defendants' summary judgment motion. That these claims failed as a matter of law, does not alter the fact that ERISA was created to protect plan participants and that an award of attorney fees to the prevailing defendants in this case would be at odds with that lofty and important purpose.

III.    CONCLUSION:

WHEREFORE, it is respectfully requested that, for the reasons set forth herein, this Honorable Court DENY defendants' motion for an award of attorneys' fees in the instant case and PROVIDE such other and further relief as it may deem necessary and proper.

IT IS HEREBY CERTIFIED that on this date the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing electronically to **Pedro Manzano-Yates, Esq.**, Fiddler González & Rodríguez, P.O. Box 363507, San Juan, Puerto Rico 00936-3507 and via regular mail to **Christopher A. Weals, Esq.**, SEYFARTH, SHAW, FAIRWEATHER & GERALDSON, 815 Connecticut Ave., N.W. - Suite 500, Washington, D.C. 20006-4004.

Respectfully submitted in San Juan, Puerto Rico this 17th day of January, 2005.

*s/Luis Amauri Suárez-Zayas*

**LUIS AMAURI SUAREZ-ZAYAS**
USDC-PR No. 118903
Avenida Borinquen 2108
Santurce, Puerto Rico 00915
Tel. (787) 761-3037
Fax (787) 727-7284

*s/Charles S. Hey-Maestre*

**CHARLES S. HEY-MAESTRE**
USDC-PR No. 201906
1060 Calle Borinqueña
Condominio Santa Rita Ofic. C-8
Río Piedras, Puerto Rico 00925
Tel. (787) 758-8950
Fax: (787) 758-8911

ATTORNEYS FOR PLAINTIFFS